to 19-1105 W.C. Maria Alvarado, appellee, v. Illinois Workers' Compensation Commission, Menard Incorporated, appellant. Okay. Mr. Crowe, Mr. Massour, you're on video. Is your audio working for you, Mr. Crowe? Yes, it is, Your Honor. Okay. Mr. Massour? Yes, it is, Your Honor. Okay. Very good. Good morning. Good morning. Good morning, both of you, to both of you. Let us proceed, Mr. Crowe, if you will. Thank you, Your Honor. Good morning, justices and counsel. My name is Dan Crowe. I represent the employer, Appellant Menard, Inc., in this case. First and foremost, I want to apologize. My initial brief had contained some typographical errors. I prepared that brief remotely. It was the first time I had ever done this. I'm afraid that my eyesight is not what it used to be, and I did make some mistakes. I don't believe the mistakes were of substance, and I think the proper sanction or remedy would be an admonishment of me for making the errors, and I apologize. This is an appeal from an order entered by Judge Melissa Barnhart in Kendall County, reversing the commission's order that an incentive program that my client had started for its employees was an actual wage as opposed to a bonus. It is Menard's position that the circuit court had erred in this judgment when she reversed the decision of the commission. We believe it's Menard's contention that the program, which is titled—we refer to the acronym, which you will see on one of the exhibits, which is a wage statement. It's called BIPS, and what we call it is the Bonus Instant Profit Sharing. It also appears in the documentation as simply Instant Profit Sharing. As indicated, we believe that this constitutes a bonus under Section 10 and should be excluded from the calculation of the average weekly wage. Mr. Crowl, let me ask you a question. You're familiar with the Archiler-Meidel Steel case? Yes, sir. In that case, we held that the production bonus paid to defendants by his employer should be included in considering the claimant's average weekly wage because the bonus was provided in consideration for work performed pursuant to a collective bargaining agreement. The question is, how is this case distinguished from the Meidel Steel case? Significantly, Your Honor. In the Archiler case, the bonus, first of all, was paid directly to a worker based upon that individual worker's production of the volume of steel and the quality of that volume. It was not a group or collective payment. It was a singular collective made specifically to that person for what that person produced. But I think more significantly than that is that the bonus that was paid in Archiler was subject to the collective bargaining agreement between the employee's union and the employer. That made it an enforceable contractual right. In this particular case, there are disclaimers all over the place indicating that it's a discretionary payment, a discretionary bonus, and it is not something that can be enforced in court as a contractual right. I believe that that really is the crux of this case, is the fact that this is not a... I'm sorry. Go ahead, Mr. Crowe. No. Yes, please continue. Okay. So before I recite the history of the case and I get into what I believe the significant facts to be, I want to recite a statement made by this court in the case of Archiler Meidel Steel versus Industrial Commission, or I mean Illinois Workers' Compensation Commission, and that is the determination of a claimant's average weekly wage is a question of fact and the commission's determination will not be disturbed unless it is contrary to the manifest way to the evidence. This, I believe, is the standard of review in this case. This is a factual case and the commission made a determination on the facts. This is not a case involving a law or the interpretation of a statute, and I do not believe it requires an interpretation of the statute. I think that you've made, this court has made it very clear about the law concerning bonuses in the Archiler case and I think that the Archiler case is right on point and I think that it certainly could be applied to this case. All right, so you're saying Archiler is distinguishable because in that case there was a contractual right accruing to the employee, but here there was no right, no obligation by the employer. They could give the bonus, they could cancel it, they could do whatever they wanted. There was no contractual obligation. Is that the gist of your position? Yes, it is, your honor. Okay. Mr. Crowe, I have a question. This bonus, it's included in the W-2? Yes, sir. And so there's withholding and all of the normal things on a wage? That is correct, your honor. Why is that instead of a 1099? Well, it's a taxable event. So a 1099 is income and it's taxable in terms of the individual. Yes, I'm not really that well versed in tax law, Mr. Justice. Well, I would think Menard as a big corporation ought to be able to look at that. If this were a bonus, why is it included in the W-2? With withholding and all of that. I think the employee is obligated to pay tax on it, your honor. On a bonus, that's on a 1099, that's his determination on how he deals with that dollar figure that's given to him in an envelope, so to speak. And that's not the employer's concern. Well, I think there's some IRS problems here, Mr. Crowe. I'm not particularly comfortable with, now that may be form over substance as we decide this case under the Comp Act, but it does seem to create some questions in my mind as to what's going on here because that makes it look pretty much like a wage, doesn't it? Yes, but I mean, I'm not quite sure what the accounting practices are. I mean, I've seen, to be perfectly frank with you, I've never seen a bonus that was not included on a W-2 and that's in my own practice going back to since I was beginning as a lawyer. I always, it always seems to come under a W-2 and not a 1099. That would inure to the benefit, Mr. Crowe, arguably over time to the employee in a social security base, but that's a social security wage base to calculate the social security benefit. So arguably just going one step further, if it's included in your W-2, is it included in the social security wage base? I'm sure that it is. I mean, I don't know because we did not really address that issue in the case. Now we have the social security treating it as a wage, theoretically. I wouldn't say that they are created as a wage. I think they viewed it as income and I think that there's a distinction between income and wage and what form it takes. That would be my argument to that, your honor. Yeah. Okay. Thank you, Mr. Crowe. Thank you. So the facts of the case are as follows. They're pretty simple. It's a tragic accident. The petitioner's spouse, Mr. Evaristo Alvarado was employed by Menards for several years. The accident was accepted. Benefits were paid. The only matter and issue is whether the compensation paid to the decedent under the BIPS or the IPS program should be considered a section 10 bonus or a wage included in the calculation. The case proceeded to arbitration before 2017. Arbitrator Flores found that the IPS compensation was wages and should be included in the average weekly wage calculation. Menards filed a timely review of the arbitration decision and we went before the commission in February of 2019. At that time, the commission had reversed the arbitrator, finding that the IPS program was in fact a section 10 bonus. The reason was is that they followed our color and that it was a, this was not something that was paid directly to the employee, um, uh, for work that the employee performed, but it was a collective bonus for the entire department in which he worked. The entire department in which he worked is given a, um, is given a, um, excuse me, um, a goal to meet. And if they meet that goal or exceed that goal, then that is what, uh, that's how they determine it. The evidence in this case shows that Mr. uh, Mr. Alvarado had 20 other members. There were 20 other team members, which is how Menards refers their employees, uh, in the, um, in that department. So, uh, had they collectively had not achieved their profit goals, then, uh, there were no, no bonus would have been paid. Um, well, did they achieve the goals in this case? Yes, they did. Okay. So how would you respond to the argument? Um, I'm sure that can be made at the payments were sort of in consideration for the work that was performed, wasn't it? Uh, well, uh, yes, but as I said, not individually, but collectively. And I think that that's where we draw the distinction that we got from our color is that it has to be individual, not collective. But I think most important as I keep going back to that one thing is that it's not, it's not something that can be enforced in court. It is not a, uh, it is not a contractual right. Uh, the disclaimers, uh, you've seen them in the exhibits, the there's disclaimers all over the place with respect to that. And if they state that it could be changed, it could be, it could be ended at any point. Uh, and it's all on the unilateral decision of Menards if they choose to end it. Well, Mr. Crow, it's a contractual right. They meet their goal, isn't it? Well, uh, you know, that's a really good question and, uh, it, it has never been litigated, but I mean, if, if, uh, let's say for instance, the entire group got together and said, Hey, we met our goals and we're entitled to be paid. Then perhaps you'd have a point. But I think individually, no, because I think that the disclaimer, and I think that this is a, this is across the board with all the other cases that I cited from other areas of the law in which they talk about discretionary payments. And I think that we really have to focus on the term discretion and what it really means. This is something that is within the discretion of Menards. They can pay it if they want to. They don't, they, they, they don't have to pay it if they don't want to set forth in the, in the plan manual to the employee. Yes, there's, uh, there's three, there's three things that, uh, uh, an employee or the employees must satisfy in order to, um, uh, obtain the, uh, obtain the, uh, the bonus. The first is they have to work at least 1000 hours. Mr. Crowe, I don't think the issue is what the employee has to do. The issue is the document provides that the program is discretionary. The employer has the right to amend it or cancel it in whole or in part. He can modify it. He can reduce it. He can withhold the employer can withhold the awards. It doesn't make any difference what the enforceable in the answer that appears to be no. And so that's the issue in the case. The issue isn't how many widgets does he have to produce in order to be entitled to the bonus or the group has to produce. The issue is whether this is an enforceable contract. And that appears to be what distinguishes it from the earlier case. That's my argument judge. And that's my argument in this case. And that is what I've actually, that's what I pointed out in all of the other cases that I cited that are outside the worker's compensation realm that, uh, that when you have something that is discretionary and when someone who believes that they are a, they should be a then they're, they do not have a contractor right to it. And therefore it's denied. Um, I, I, there's a series of cases that I, that I close to the end of my brief in which I, um, which I discuss. And, uh, the only one that makes an exception is a Camino versus, uh, um, uh, Walmart. And in that particular case, it was not deter that there was a discretionary bonus. And, and as you'll probably note many, many stores like Menards that do business in the state of Illinois have programs that are very similar to this one. Um, and, uh, so consequently in the Camino case, an individual, uh, was going to resign and, uh, his employer talked him out of resigning, uh, because he said, Hey, you got this bonus coming stick around. And then before the he sued for the bonus and the court was very specific, not finding that he was entitled that he was entitled to the payment based on promissory estoppel, uh, because he stayed in the promise that he received them bonus and not because the bonus was contractual. And Mr. Crow, your time is up. The red light just came on. You'll have time and reply. I'm very sorry. Uh, do I have two minutes? Should I wait until my turn in the next five? Yes, you have time. Five minutes to reply. Yes. Okay. Then. Thank you. I'm sorry. Thank you very much. Okay. Mr. Yes. Maser. May it please. May it, may it please the court, Mark Maser. And I have the honor of representing, uh, the petitioner of Peli Maria Alvarado as wife and next a friend of her deceased husband, every stove very briefly on the standard of review. Any one of there are any one of three reasons to affirm judge Barnhart's decision, finding a DeNovo standard of review one, there simply were no facts in dispute in this case. And that's confirmed by the science stipulation of the parties saying, and I quote, the legal question presented is whether the lump sum payment is included in the calculation of decedents average weekly wage. We know that questions of law are reviewed DeNovo number two. This is involving the matter of statutory construction of section 10, just like Ferris and United Airlines dealt with statutory construction. So does this, we are interpreting bonus and actual earnings as defined in section 10 of the act. And number three, we know that when no facts are in dispute and only a single inference can be drawn only applying the law to the facts, a DeNovo standard of review is applied. And what is the, what is the single inference only that can be drawn? The single inference is that these were actual earnings and not a gratuitous bonus properly included in the calculation of the average weekly wage. Is that an inference or is that a legal conclusion? Right. I believe the facts were undisputed in this case as set forth in the briefs of the parties. And it was the application of the law to the facts and interpretation. That's a conclusion. And an interpretation of section 10 of the act in terms of actual earnings bonus. And my other point is that it's not an inference. It's a conclusion based on the application of the law to the facts. We're not inferring anything. We believe that a DeNovo standard of review is applicable as found by judge Barnhart. Now Menards provided a financial incentive program as part of its compensation plan to its employees. It was a program designed to incentivize the work of its employees in order to increase its profits. The stated goal of the program was to provide employees with a personal stake in their work unit and to be partners in profit with Menards. Having financially capitalized on the program, Menards now seeks to deprive Mrs. Alvarado of proper statutory compensation. Menards cannot rewrite what it declared its employees are entitled to earn. Very briefly, I just want to recite several facts that are relevant to our position. Can I draw you up on that question? You're saying Menards can't rewrite what it offered its employees. That's not what the plan says. The plan says they reserve the right to reduce, modify, or withhold the awards. Number one, it's totally discretionary and does not constitute a guarantee of any particular amount of compensation, and it does not create a contractual relationship. So why don't those disclaimers take this out of an entitlement, a wage that he's entitled to? Very good question, Justice Hoffman, and if I can respond. First of all, I think the brochures and the testimony of Menards' HR coordinator have to be taken in totality. We can't just isolate the disclaimer on page seven in small print of a seven-page brochure that's handed out to its employees. But with regard to that specific question, the fact is, based on the totality of this program, was discretionary in name only. This was nothing more than a litigation posture belied by the record. They're referring to this fine print on page seven, but the fact is, how did this program function in practice? There's not a shred of evidence in this record to suggest Menards ever exercised any discretion in withholding a payment to Mr. Alvarado or for that matter, any employee once earned. And let's keep in mind that the undisputed testimony is this program was in effect since 1958. Had Menards ever exercised any discretion, we would have heard about it. The program has all the touchstones and elements of earnings paid in consideration of work the decedent performed. And as arbitrator Flores found and Justice Barnhart, the IPS payment issue wasn't discretionary at all once Mr. Alvarado met the eligibility requirements, which he did in 2011 and then received compensation on February 10th, 2012. I would also point out that Mr. Alvarado was a non-union, non-contractual employee. He was an employee at will of Menards. So arguably Menards had the discretion to reduce his hourly pay, which we know was 1610 an hour. The fact that they had the discretion to change that at any time, doesn't mean that that hourly rate, that rate of pay over the relevant time period is not included in the calculation under section 10 of his average weekly wage. That's a little bit different than the characterization of a bonus. I'm sorry, could you repeat that your honor? I said that's a little different than the determination of whether a payment is or is not a bonus. Wages, wages are wages. Whatever he's being paid, he's being paid. Certainly they could have reduced it. And then the calculation would have been entirely different under the act. But that's not the issue here. The issue here is whether the amount of money paid pursuant to this program was or was not a bonus within the statute. And we, and we submit to the court that it was not a bonus. Again, based on the totality, not just the written documents. I only, I only drew you up on your argument that because they could, they could change his hourly rate, that that has something to do with, with whether it's discretionary. Well, in other words, my only argument is his hourly pay is discretionary since he's an at will employee. The other thing is I want to mention because justice Hoffman, you asked this and earlier, and Mr. Crow, it's the crux of his argument is he cites Arcelor for the proposition that you have to be a union employee to receive incentive pay paid in consideration for work performed. I don't, I think that's a mischaracterization of his argument. I think his argument is, it's not a, a bonus. It's not discretionary when it's contractually mandatory. And under the collective bargaining agreement, the bonus in the earlier case was mandatory and enforceable as a contractual matter. That, that's his argument, I think. Okay. Well, we would submit to the question. What do you make of the language that's contained in the plan manual that specifically states the program does not create a contractual relationship or any contractually enforceable rights between the employer and the employee. How does that bear on the argument? My, my response to that justice Hudson would be, this isn't a contract case. This is a case about what was earned as defined under section 10. And Arcelor supports our position in this regard. The fact that they say it's discretionary, that they say there's no contractual right to it. Doesn't mean make it. So we know there are an abundance of cases before the commission every day on employer versus independent contractor. And an employer could have a petitioner sign a document that says it's an independent contractor. We still look at all the touchstones to determine whether in fact it's an employer, employee relationship or independent contractor. And when you look at everything else, Januszewski admit, she was the woman who communicated this program to employees. She told us it wasn't a gratuitous benefit and it was earnings. She told us it was paid in consideration for the work performed. These words have meaning. What was equally as important is what she didn't tell us. Mr. Crow never asked her one question about what she communicated to employees or how she described the program. One has to ask why no questions were asked like that. As to specifically the contractual nature, I don't believe Arcelor's ruling is limited to calculating average weekly wage for incentive pay paid under a collective bargaining agreement. Because if that were the case, we would be setting up a conflict. In other words, if you had the exact same program for one company and there's a collective bargaining agreement, so there's a contractual at will employee of a company on the same program that would under Mr. Crow's position and Menard's position, that would not be included. And we know that the workers' compensation statute is remedial in nature and that couldn't be plausible here. So we don't believe that Arcelor's proposition stands for the fact that you have to have a contractual right for it to be enforced. The test is whether it was paid in consideration for the work performed. Mr. Mazur, let me try and see if I can call out the essence of your argument on this point. So you recognize the clear limiting language in the plan manual. I mean, I don't think that can be disputed. It's set forth in the manual. Are you saying then that somehow that language can be overridden by the course of conduct between the company and the employee? I'm saying that that can be overridden by looking at the totality of the circumstances. The totality of the circumstances is, let's look at the entire brochure as to whether an employee, you know, we're talking about what Menard said, but the employee's perspective, I humbly submit, is given equal weight here. And the question is, what was communicated? We know what Ms. Janiszewski said about the program. We know that Menard's, you had to meet performance expectations to receive the bonus. We know that Menard's continually during unit meetings would encourage the unit members, the 20-member fleet mechanic unit in Plano of Mr. Alvarado's, to meet the profits, to work harder to meet the production limits so that the unit is profitable. And why did they do that? Because they said Mr. Alvarado was their partner in profit, that he had a personal stake in this. That's why. So I submit, Justice Hudson, that I acknowledge what's in the document. I'm just telling you that as a matter of fact, in this case, the reality is the discretion was never exercised. And when you look at the totality of factors, this was communicated as an incentive plan. There's no doubt about that. I don't think there's any serious doubt that it was paid in consideration for the work performed, and therefore it meets the definition of actual earnings. Now the question is, is it a bonus? If we look at all Menard's claims, it's a bonus. Ironically, in all of the literature that's communicated to the employees, the word bonus doesn't appear anywhere. The fact is, it wasn't a bonus because it was never communicated as such. And these words have meaning. They denote what is available to employees to earn. I submit humbly that they're admissions of Menard's. They declared them to be earnings. They even, on the front of the IPS program, this seven-page pamphlet dedicated entirely to this program, there's a big head with a dollar sign. And on each page, there's a big dollar sign on every one of those pages. And so what are they trying to communicate? They're trying to communicate that, look, you're our partner in profit. You work hard, you're going to get paid for it. And that's confirmed with Mr. Alvarado because he worked seven, eight years for the company. The first year he worked part-time and then he left for a brief period of time and returned. He was paid IPS payments for seven consecutive years uninterrupted in increasing amounts. His hours started at 11. Let me ask you, why was he not paid the bonus in 2005? He was not paid, Your Honor, because one of the eligibility requirements is you have to work 1,000 paid hours during the W-2 year. He was working part-time and he did not make that. He only worked- Is there any significance to the fact that in this case, he was paid the $7,000 for the previous year in February, a month and a half before he died? So how is going forward after that payment in February, he hasn't worked, clearly he can't work 1,000 hours. How has he that additional income, whatever it is, wage or benefit, if he hasn't, he's not going to be able to work 1,000 hours. How is that significant at all? Excellent question. It's based on the previous calendar year. So Mr. Alvarado's payment of $7,700 and change paid on February 10th because he earned it in the 2011 calendar year. In other words, he fulfilled all of the eligibility requirements in the previous year. So it was paid within the statutory period. The only other point I would make is Mr. Crow has incorrectly stated that Arcelor is based on individual performance. It's based on the crew, not the individual performance. Thank you for your time and thank you, Your Honor. I want to touch upon one thing I didn't get a chance to touch on in my argument in chief, and that is the policy considerations here. As I did touch upon the fact that just about every, a lot of it, there's quite a few businesses in the state of Illinois who have programs like this in place. Should a decision be made contrary and stating that these are part of the average weekly wage? Across the board, that will increase average weekly wage for thousands of employees. It will increase their employers' workers' compensation exposures, and it will also increase their insurance premiums. Secondly, they might just do away with it. How will it increase their exposures? I'm sorry? How will it increase their exposure? Oh, I mean, it's just more money. It'll just cost them more money. I mean, in this case, particularly, you're talking $100 a week over 25 years. That's $100,000. The present cash value is about $120,000. Okay. Well, multiply that across for every accident that takes place in the state of Illinois with one of these big box companies. I don't want to dwell on that. Then the other two is that, for the petitioners and all employees' sake, they could lose their bonus. This is $7,700 that this guy got. Because of a bad decision or a decision that goes against the employers on this, they might do away with that. That's $7,700 less. Now, Mr. Mazur touched upon the fact that he said that Ms. Januszewski did not testify that there was never a situation where the bonus was not paid. That is not true. She did state that there were circumstances where she was aware of where the bonus did not pay because the profit was not earned by the group. So, as a consequence, the Section 12 bonus was not paid. That's right in there. Now, the other thing is that Mr. Mazur just told us that the term bonus is not used in reference to the IPS program. Well, I just refer you to Respondent's Exhibit 13, which is an internet advertisement for come and join, become a team member, where they specifically call it Bonus Incentive Program. Getting back to the standard of review, I think that in terms of fact, the commission had to go through all of the contracts, and they had to make determinations. There were fact questions as to the significance of the language, and they made determinations based upon that. This is not the kind of factual issue questions like the one that was cited. I know it was in a different case. I'm sorry. I've got it cited. The facts are that there was an accident involving a traveling employee who had deviated from his job. The question was, there's no question of fact whatsoever. Was this a deviation? That was it. The United Airlines case was whether or not disability meant an economic disability or another type of disability, and whether or not the premiums that were paid for her insurance should have been included in her wage differential. Totally different from what we have here. One of the things is that we call them who does not want his employees to work hard. There's not an employer who does not incentivize their employees. It's not that I'm not going to work hard for you because we're not getting a bonus. We've added this is something more. This is what keeps people. There's no question it's an incentive. We call it that. It's in the literature. The thing I think that this court must focus on when it goes back to deliberate in this case is that this was not a contractual right and that this petitioner could not enforce this as they could in the Arcolar case. The fact that there's a union involved here is not relevant to the facts of this case. The fact is that it's the contract document itself and what is contained in the contract. I thank you, gentlemen. Have a pleasant day. Thank you, counsel, both for your arguments in this matter. We've taken our advisement. The written disposition shall